IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RENU MAYA KADARIYA,      :    CIVIL NO.: 1:25-cv-00464
                         :
        Plaintiff,       :    (Magistrate Judge Schwab)
                         :
    v.                   :
                         :
                         :
                         :
FRANK BISIGNANO,[1]      :
Commissioner of Social Security,  :
                         :
        Defendant.       :

**<u>MEMORANDUM OPINION</u>**

**I.  Introduction.**

In this social security action, Plaintiff Renu Maya Kadariya seeks judicial

review of the final decision of the Commissioner of Social Security

("Commissioner") denying her claim for disability insurance benefits under Title II

of the Social Security Act.  We have jurisdiction under 42 U.S.C. § 405(g).  For the

reasons set forth below, we will vacate the Commissioner's decision and remand

the case to the Commissioner for further proceedings.

---

[1] Frank Bisignano is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 9-1* to 9-8.[2]  On January 23, 2021, Kadariya protectively filed[3] an application for disability insurance benefits. *See Admin. Tr.* at 245–49.  She contends that she has been disabled since September 22, 2018. *Id*. at 248.  After the Commissioner denied her claim at the initial level and at the reconsideration level of administrative review, Kadariya requested an administrative hearing. *Id.* at 58–92, 115–16.  In December 2023, Kadariya—who was represented by counsel—as well as a vocational expert testified at a hearing before Administrative Law Judge Howard Kauffman (the "ALJ"). *Id*. at 34–57.  In January 2024, the ALJ denied Kadariya's claim for benefits. *Id*. at 14–33.  Kadariya appealed the ALJ's decision to the Appeals Council, which denied her request for review. *Id*. at 1–6.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Kadariya's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.

In March 2025, Kadariya, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying her claim. *See Doc. 1*. She requests that the court find that she is entitled to benefits, remand the case to the Commissioner for further proceedings, or grant such relief as is justified. *Id*. ¶ 14 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 7*. The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 8, 9*. The parties filed briefs, *see docs. 14, 19, 20*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "means—

and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Kadariya is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

## B. Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Under this process, the

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Kadariya met the insured-status requirements through March 31, 2023. *Admin. Tr*. at 17, 19.

ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the

national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On January 30, 2024, the ALJ denied Kadariya's claim for benefits. *Admin. Tr.* at 14–33. He proceeded through the first four steps of the five-step sequential-evaluation process.

### A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Kadariya had not engaged in substantial gainful activity since her alleged onset date of September 22, 2018, through March 31, 2023, her date last insured. *Id.* at 19.

### B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Kadariya had the following severe impairments: depression, somatic disorder, degenerative disc disease, degenerative joint disease, post-traumatic stress disorder, and tinnitus. *Id.*[5]  The ALJ also found that Kadariya's diverticulosis, thyroid issued, GERD, B12 deficiency, ulcer, and myopia were not severe impairments. *Id.* at 19–20.  He further concluded that Kadariya "has a non-medically determinable impairment of Alzheimer's and traumatic brain injury (TBI)" *Id.* at 20.

### C.  Step Three.

At step three of the sequential-evaluation process, the ALJ found that Kadariya did not have an impairment or combination of impairments that met or

---

[5] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to regulations as well as citations to the record.

medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 20–22.  Specifically, the ALJ considered Listings 1.15, 1.16, and 1.18 with respect to Kadariya's physical impairments. *Id*. at 20.

The ALJ considered Listings 12.04, 12.06 and 12.15 with respect to Kadariya's mental impairments. *Id*. at 20–22.  In doing so, he considered the four broad areas of mental functioning set forth in the disability regulations for evaluating mental disorders[6] and in the listings, known as the paragraph B criteria.[7]

---

[6] When "mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019).  The regulations set forth a "special technique" used for evaluating mental impairments. *See* 20 C.F. R. § 404.1520a.  As part of that "special technique," a claimant's degree of functional limitation is rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. at § 404.1520a(c)(3).  A claimant's degree of limitation in these functional areas is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id*. at § 404.1520a(c)(4).  The ratings in these four broad functional areas are used at Step 2 to determine if the claimant has a severe mental impairment, and if the claimant has a severe mental impairment, the ratings are also used at Step 3 to determine if the claimant's severe mental impairment meets or equals a listed mental disorder. *Id*. at § 404.1520a(d).

[7] The listings for mental disorders contain either two paragraphs (A and B) or three paragraphs (A, B, and C). *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A.2.  Except as to Listing 12.05 (intellectual disorder), paragraph B of each of the listings for the mental disorders sets forth the same four functional criteria as set forth in 20 C.F. R. § 404.1520a, and the listings use the same five-point rating scale as those regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.A.2.b, 12.00.E, 12.00.F.  This is what the ALJ is referring to when he refers to the paragraph B criteria.

The ALJ determined that Kadariya had a marked limitation in understanding, remembering, or applying information. *Id*. at 21.  He acknowledged that Kadariya "reported that she needs assistance with cooking, preparing food, and cleaning." *Id*. at 21.  But the ALJ noted that Kadariya also "report[ed] that she cooks four times per week," and her "son reported that she makes rice and curry, folds clothes, and irons." *Id*.  The ALJ also recognized that Kadariya "reportedly needs reminders to attend to personal care and to take medications," and she "reportedly cannot travel alone." *Id*.

The ALJ determined that Kadariya had a moderate limitation in interacting with others. *Id*.  In this regard, the ALJ noted that Kadariya "socializes with others in person, on the phone, and via video chat," but she "has no community involvement and socializes only with her family." *Id*.  She visits family, is able shop in stores with her family, and she attends Temple. *Id*.  The ALJ also asserted that Kadariya "stated that she walks with friends." *Id*.[8]

The ALJ also determined that Kadariya had a moderate limitation in concentrating, persisting, or maintaining pace. *Id*.  In this regard, the ALJ stated that Kadariya "reported that she enjoys watching television" and "that she does not

_____

[8] The ALJ cites Kadariya's testimony to support this assertion.  Kadariya testified that when she walks with friends, she needs a cane. *Admin. Tr.* at 39.  But when the ALJ asked her who her friends were, she testified that they were her caregiver or caretaker. *Id. at 40*.  And her attorney clarified that Kadariya's caretaker is her son. *Id*.

finish was she starts and can only pay attention for [].” *Id.*[9] He also noted that

“[d]uring the consultative examination, [Kadariya] was noted to have mildly

impaired attention and concentration” and “she was able to count to 10 but was

unable to perform simple calculations due to a lack of formal education.” *Id*.

The ALJ further determined that Kadariya had a moderate limitation in

adapting or managing oneself. *Id*.  He stated that Kadariya is able to feed herself

and dress, bathe, and groom herself. *Id*.  And “[o]n examination she appeared well-

groomed.” *Id*.  The ALJ  noted that Kadariya “reported that she is not able to

manage money or drive,” but “she is able to count change and pay bills.” *Id*.

Kadariya’s “case manager reported that she is able to manage changes in routine,

but does not handle stress well.” *Id*.

Because the ALJ concluded that Kadariya’s did not have at least two

“marked” limitations or one “extreme” limitation,  he concluded that “the

‘paragraph B’ criteria were not satisfied.” *Id*.  He also determined that Kadariya

did not satisfy the paragraph C criteria. *Id*.  The ALJ recognized that the paragraph

B criteria are not an RFC; rather, they “are used to rate the severity of mental

impairments at steps 2 and 3 of the sequential evaluation process[,]” and the RFC

---

[9] The ALJ did not finish this sentence.  We note that at the hearing when asked if she has difficulty focusing on things, Kadariya testified: “I don’t have focus on anything.  The only thing I’m focusing is on the pain that I’m feeling so the pain overtakes my focusing abilities and I have to focus thinking about pain.” *Admin. Tr.* at 47 (grammatical errors in original).

"assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." *Id*. at 21–22.  And he asserted that the RFC that follows "reflects the degree of limitation" he "has found in the 'paragraph B' mental function analysis." *Id*. at 22.

### D.  The RFC.

The ALJ then determined that Kadariya had the RFC to perform light work[10] with some limitations. *Id*.  He concluded that Kadariya could do light work "except occasional postural limitations." *Id*.[11]  He concluded that she "can perform simple, routine, and repetitive tasks," but "[s]he cannot work at a production pace." *Id*. And "[s]he can occasionally interact with the public, co-workers, and supervisors." *Id*. The ALJ further concluded that Kadariya "is limited to a low stress job, defined as few workplace changes with an SCO noise level no greater than 3." *Id*.

---

[10] *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

[11] The ALJ did not explain what he means by "except occasional postural limitations," but because neither party raises an issue in that regard, we do not address that issue further.

In making this RFC assessment, the ALJ briefly considered Kadariya's testimony regarding her limitations:

> [Kadariya] reported that she takes medication and injections for her back every three months.  She stated that she uses a cane when walking with friends.  She reported that she falls and experiences a burning sensation throughout her body.  [Kadariya] stated that when she is sitting she feels that her knee is going to explode.  She stated that she has difficulty focusing due to pain. [Kadariya] also testified that she has trouble hearing due to ringing in her ears.

*Id*. The ALJ concluded that although Kadariya's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*.

The ALJ also considered Kadariya's medical records and the treatment she received. *Id*. at 23–24.  As to Kadariya's mental impairments,[12] the ALJ stated that Kadariya was diagnosed with somatic symptom disorder, that she complains of pain all over—including abdominal pain, back pain, and leg pain—and that she has treated with gabapentin and duloxetine for her pain and "mirtazapine and duloxetine for persistent depression symptoms and somatic symptom disorder with

---

[12] Because our determination in this case turns on the ALJ's treatment of Kadariya's mental impairments, we do not recount the ALJ's discussion of the medical records regarding Kadariya's physical impairments or the opinion evidence regarding her physical impairments.

chronic pain." *Id*. at 23.  He noted that Kadariya "reported benefit from these medications." *Id*.

The ALJ summarized the report from a psychological consultative examination Kadariya underwent in May 2021. *Id*. at 24.  He noted that Kadariya "reported that she has never seen a therapist" that "she began seeing a psychiatrist in 2018 but was not seeing one at the time of examination," and that she had "difficulty falling asleep, loss of appetite, no suicidal/homicidal ideation, and reported memory deficits." *Id*.  During the examination, Kadariya "exhibited satisfactory hygiene and grooming," "[s]he had appropriate eye contact and appropriate affect," and "[s]he could count to 10." *Id*.  "She has no formal education and was not able to do simple calculations." *Id*.  And she "had difficulty with memory tasks." *Id*.  Further "[h]er general fund of knowledge was somewhat limited," but she "had fair insight and judgment." *Id*.

The ALJ also summarized the report from a consultative mental status evaluation that Kadariya underwent in September 2021:

> [Kadariya] reported that all of her mental health treatment regimens are provided through her primary care physician.  She reported difficulty falling asleep, dysphoric moods, feelings of hopelessness, fatigue, difficulty concentrating, diminished sense of pleasure, worry, and social withdrawal.  On examination she exhibited coherent and goal-directed thought process, dysthymic and anxious mood, and depressed and anxious affect.  [Kadariya] was unable to perform serial 3s or 7s.  She was not able to recall 3/3 objects immediately or following a delay.  [Kadariya] appeared cooperative and

14

> friendly.  She did not evidence significant emotional distress
> during the evaluation.

*Id*.

The ALJ observed that although Kadariya "occasionally appeared with depressed mood and flat affect, . . . records largely show that [she] presented with appropriate mood, normal affect, normal memory, and normal judgment." *Id*.  He further noted that during Kadariya's "physical consultative examination, no obvious signs of memory impairment were noted," and that "an April 2022 examination noted findings of pleasant and normal affect, intact memory, normal speech, normal attention and concentration." *Id*.  And he concluded that "[t]he longitudinal evidence of record does not fully support [Kadariya]'s allegations regarding the extent of her impairments." *Id*.  "With regard to [Kadariya]'s mental impairments," he stated that "although the consultative examinations indicate that [Kadariya] had marked mental health issues, as discussed above, the majority of the record shows that [Kadariya] had largely normal findings." *Id*.  The ALJ asserted that his residual functional capacity assessment "takes into account the objective evidence coupled with [Kadariya]'s subjective reports by finding that she is capable of light work with postural, environmental, and mental limitations." *Id*.  According to the ALJ, "[t]he totality of the record, including [Kadariya]'s review of symptoms or presentation of her illness, fails to support a greater degree of limitation." *Id*.

15

The ALJ further considered the medical opinions in the record. *Id*. at 25–26. Specifically, as to Kadariya's mental impairments, he considered the opinions of Drs. Gavazzi, Ross, Ledermann, and Kajic. *Id*.[13]

The ALJ considered the opinions of Dr. Gavazzi and Dr. Ross—the state agency medical consultants—together. *Id*. at 25.  He noted that "Dr. Gavazzi opined [to] mild to moderate limitations in the paragraph "B" criteria and further opined that [Kadariya] can perform one or two step routine tasks in a stable environment." *Id*.  He stated that Dr. Gavazzi "based this opinion on symptoms including depression, anxiety, limited social skills, difficulty adapting to changes, as well as information that [Kadariya] has not been hospitalized psychiatrically and does not participate in psychotherapy." *Id*.  The ALJ recounted that "[o]n reconsideration Dr. Ross opined [to] moderate to marked limitations and further opined that [Kadariya] would be unable to meet the basic mental demands to

---

[13] The ALJ also referred to purported opinions by Drs. Toll and Scher. *Admin. Tr.* at 26.  He asserts that these doctors "opined [to] no limitation in the paragraph "B" criteria[,]" and that "the claimant's mental health impairment is non-severe." *Id*.  The ALJ concluded that these purported opinions are not persuasive. *Id*.  The ALJ does not cite to where in the record these purported opinions are located, and we were not able to locate them.  And curiously, when citing to the exhibits that he considered inconsistent with these purported opinions, the ALJ cites to Exhibits 24F, 31F, 33F, 36F, and 44F, *see id*., even though the last exhibit in the record in this case is 28F, *see doc. 9-1* at (Court Transcript Index).  Because neither party raises an issue regarding these purported opinions and our conclusion does not depend on them or on the ALJ's treatment of them, we need not address the issue further.

complete 1-2 step tasks on a sustained basis." *Id*.  Dr. Ross "based her opinion on

data from [Kadariya]'s case manager and findings from the second consultative

evaluation." *Id*.  The ALJ found "these opinions less than persuasive as [Kadariya]

received her mental health care from her primary care physician and those mental

status findings contained in the record show that [Kadariya] exhibited pleasant and

normal affect, intact memory, normal speech, normal attention and concentration."

*Id*.  According to the ALJ, "[t]hese normal mental status findings, taken into

consideration with the findings from the consultative examinations, are not

consistent with such significant limitations." *Id*.

The ALJ also found the opinion of Dr. Lederman, who conducted a May

2021 mental status evaluation of Kadariya,[14] less than persuasive. *Id*. at 26.  He

noted that Dr. Ledermann opined that Kadariya "would have modest limitations in

her ability to understand, remember and carry out simple instructions and make

judgments on simple work-related decisions," "marked to extreme limitations in

the ability to carry out, understand, remember, and make judgment on complex

instructions and work-related decisions," and "mild social limitations." *Id*. at 26.

The ALJ states that Dr. Lederman "supported her opinion with findings on

examination and noted that [Kadariya] had no formal education." *Id*.  He

concluded that "[m]ild social limitations are not consistent with reports that

---

[14] *See Admin. Tr*. at 1001-16.

[Kadariya] socializes only with family and has no community involvement," and "[e]xtreme limitations are not consistent with treatment notes from [Kadariya]'s primary care provider that note findings of normal affect, intact memory, normal speech, normal attention and concentration." *Id*.

The ALJ similarly found the opinion of Dr. Kajic, who had conducted a September 2021 mental status and intelligence evaluation,[15] less than persuasive:

> John Kajic, Psy.D. opined [to] marked to extreme limitations. He supported his opinion with reference to neurocognitive disorder and PTSD. However, this opinion lacks overall support as the neurocognitive disorder was based on a reported history of dementia and not on testing or objective findings. Furthermore, this opinion is not consistent with the longitudinal record. [Kadariya's] mental status findings contained in the record show that [Kadariya] exhibited pleasant and normal affect, intact memory, normal speech, normal attention and concentration. Accordingly, this opinion is less than persuasive.

*Id*.

The ALJ stated that he considered statements submitted by Kadariya's son and her case manager. *Id*. at 26. But because those statements are from non-medical sources, the ALJ asserted that "he need not articulate how this evidence was considered in terms of persuasiveness." *Id*. And he did not further address how those statements were considered.

---

[15] *See Admin. Tr.* at 1151–67.

The ALJ then pronounced that his RFC assessment "is supported by the objective medical evidence and the record as a whole." *Id*.  He declared that "[e]ven though the record indicates that [Kadariya] did have some limitations due to her impairments, the record also shows that [her] impairments were not as limiting as she has alleged, and she maintained the ability to perform work related activities within the residual functional capacity assigned." *Id*.

### E.  Step Four.

At step four of the sequential-evaluation process, the ALJ found that Kadariya was capable of performing her past relevant work at a housekeeper/cleaner. *Id*. at 26–27.

Because the ALJ found that Kadariya could perform her past relevant work, he did not proceed to step five the sequential-evaluation process.  In sum, the ALJ concluded that Kadariya "was not under a disability, as defined in the Social Security Act, at any time from September 22, 2028, the alleged onset date, through March 31, 2023, the date last insured." *Id*. at 27 (bold omitted).  Thus, he denied Kadariya's claim for benefits. *Id*.

## V.  Discussion.

Kadariya presented three claims: (1) the ALJ failed to properly evaluate the opinion of Dr. Kajic, M.D.; (2) substantial evidence does not support the ALJ's

mental RFC assessment; and (3) the ALJ erred by failing to properly evaluate her hearing limitations.  Because the ALJ's discussion of Dr. Kajic's opinion is part of the ALJ's mental RFC assessment, Kadariya's first two claims are interrelated, and we address them together.  And because these claims involve the ALJ's RFC assessment and opinion testimony, before addressing the merits of those claims, we set forth general standards regarding the RFC assessment and the evaluation of opinion testimony.

### A.  The RFC.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1).  In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066).  The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is

20

supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at \*6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).  And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).  In fact, in evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.

### B.  Opinion Testimony.

Under the current regulations, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The ALJ must explain how he or she "considered

the supportability and consistency factors for a medical source's medial opinions or prior administrative medical findings in" his or her determination or decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may, but is not required to, explain how he or she considered the remaining three factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Supportability and consistency are defined in 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  As the regulations provide, supportability means: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Simply put, supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Acosta Cuevas v. Commissioner of Social Security*, No. 20-CV-0502, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021*), adopting report and recommendation*, 2022 WL 717612, at *1 (S.D.N.Y. Mar. 10, 2022).  On the other hand, consistency means: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with

the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The consistency factor focuses on "how well a medical source is supported, or not supported, by the entire record." *Acosta Cuevas*, 2021 WL 363682, at *10.

**C.  The ALJ's mental RFC assessment is not supported by substantial evidence because the ALJ did not adequately articulate his reasons for finding the opinion of Dr. Kajic less than persuasive and he did not adequately articulate the basis for his RFC assessment.**

Kadariya contends that the ALJ failed to properly address Dr. Kajic's opinion.  She also contends that the ALJ's mental RFC assessment is not supported by substantial evidence.  We agree with both contentions.

Dr. Kajic conducted a mental status and intelligence evaluation on Kadariya in September 2021. *Admin. Tr.* at 1151–67.  He set forth Kadariya's background, history, and reports of current functioning. *Id*. at 1151–53.  He also set forth the results of his mental status examination, and he concluded that the "[r]esults of the evaluation are considered to be a valid and reliable estimate of current functioning." *Id*. at 1153–55.  Dr. Kajic further conducted a Test of Nonverbal Intelligence. *Id*. at 1155. And he reported that Kadariya had an index score of 68 on this test, which "was considered very poor." *Id*.  In addition to listing the

23

medical diagnosis reported by Kadariya, Dr. Kajic set forth his diagnoses as follows:

> Major neurocognitive disorder due to a reported
> history of dementia, per history, per report.
> Depressive disorder due to another medical condition.
> Anxiety disorder due to another medical condition.
> Posttraumatic stress disorder.

*Id*. at 1155–56.  He concluded that Kadariya's prognosis was guarded given her "age, psychiatric history, and level of memory issues." *Id*. at 1156.  Dr. Kajic also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." *Id*. at 1157–1159.  He opined that Kadariya has marked and extreme limitations due to a neurocognitive disorder, PTSD, anxiety and depression. *Id*.

Kadariya contends that the ALJ failed to properly address Dr. Kajic's opinion for several reasons including that the ALJ states that Dr. Kajic based his opinion regarding her having a neurocognitive disorder on a reported history of dementia, and not on testing or objective findings, but the ALJ failed to note that Dr. Kajic conducted a Test of Nonverbal Intelligence.  In fact, the ALJ does not mention the Test of Nonverbal Intelligence when assessing Dr. Kajic's opinion. *See Admin. Tr.* at 26.  Nor does he mention it when summarizing Dr. Kajic's report. *Id*. at 24.  Although "[t]here is no requirement that the ALJ discuss in [his] opinion every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004),  the "ALJ may not reject pertinent or probative

24

evidence without explanation," *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705). Here, the ALJ's failure to acknowledge that Dr. Kajic conducted a Test of Nonverbal Intelligence on Kadariya and that Kadariya scored very poorly on that test is concerning. This is especially so where the basis for the ALJ's finding that Dr. Kajic's decision was less than persuasive was, at least in part, based on a lack of testing.

Moreover, while Dr. Kajic stated that his diagnosis of a neurocognitive disorder was "due to a reported history of dementia, per history, per report," *id.* at 1155, he indicated that his opinions regarding Kadariya's functioning were based not only on a neurocognitive disorder, but also on PTSD, anxiety, and depression, *id.* at 1157–58. And there is no reasonable basis to think that his opinions were based only on history or reports rather than his mental status evaluation of Kadariya as well as the result of his testing. Accordingly, the ALJ' cursory conclusion that Dr. Kajic's opinion is not supported because his diagnosis of a neurocognitive disorder was based on history and report fails to satisfy his duty to articulate his reasoning sufficient to allow meaningful judicial review of his analysis.

Kadariya also contends that substantial evidence does not support the ALJ's mental RFC assessment.  Her argument in this regard is multifaceted.  One facet of her argument is that the ALJ failed to articulate why he chose the functional restrictions that he did in light of the evidence. *See doc. 14* at 16 (stating that "the ALJ failed to set forth a supported rationale for his RFC findings"); *id.* at 18 ("The ALJ failed to explain how, given the available evidence (Ms. Kadariya's testimony, medical evidence, etc.), he included the functional restrictions that he chose to include in his assessment of Ms. Kadariya's RFC); *doc. 20* at 5 (stating that "the Commissioner argues that the ALJ is not required to rely on a matching medi[c]al opinion to assess a claimant's RFC," but asserting that "the Commissioner missed Plaintiff's argument—the ALJ failed to set forth a supported rationale for his RFC findings").  We agree that the ALJ failed to sufficiently explain his RFC assessment.  For example, he failed to explain why he determined that Kadariya can perform "simple, routine, and repetitive tasks"[16] in light of the evidence and in light of his determination that Kadariya has moderate limitations in concentrating, persisting, or maintaining pace and marked limitations in understanding, remembering, or applying information.

---

[16] For ease of reference, we will refer to that limitation as a simple-tasks limitation.  "A limitation to 'simple tasks' is fundamentally the same as one 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210 (3d Cir. 2019) (citations omitted).

The Third Circuit addressed whether an ALJ's RFC simple-tasks limitation is permissible where the ALJ found at step 3 of the five-step sequential evaluation process that the claimant had moderate limitations in concentration, persistence, or pace. *Hess*, 931 F.3d at 208–13. The Third Circuit held that "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Id.* at 211. The court explained that a valid explanation is necessary because of the close relationship between a "simple tasks" limitation and concentration, persistence, or pace:

> [S]uch limitations directly encompass and anticipate a minimal level of ability in that functional area. "[U]nderstanding, carrying out, and remembering simple instructions" includes "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)[;] [t]he ability to perform activities within a schedule … [;] [t]he ability to sustain an ordinary routine without special supervision[;] … [and] [t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace and without an unreasonable number and length of rest periods."

*Id.* at 212-13 (citations omitted) (alterations in original). A valid explanation is necessary to elucidate why the claimant's difficulties are not so significant to prevent him or her from performing simple tasks. *Id.* at 212. The Third Circuit has

27

adopted a "fact-specific 'valid explanation' approach" and the outcome of each case depends on the particular facts. *Id.* at 213.

The ALJ in *Hess* "highlighted, among other things, the following: mental status examinations and reports that revealed that Hess could function effectively; opinion evidence showing that Hess could do simple work; and Hess's activities of daily living, which demonstrated that he is capable of engaging in a diverse array of 'simple tasks.'" *Id.* at 214. And the court in *Hess* concluded that the ALJ in that case provided a valid explanation for her limitation to simple tasks given that she explained "with sound reasoning why Hess's 'moderate' difficulties in 'concentration, persistence, or pace' were not so significant that Hess was incapable of performing 'simple tasks.'" *Id.* at 213. "For example, coupled with her finding that Hess had 'moderate difficulties' in 'concentration, persistence or pace,' the ALJ explained that Hess's 'self-reported activities of daily living, such as doing laundry, taking care of his personal needs, shopping, working, and paying bills (when he has money), . . . are consistent with an individual who is able to perform simple, routine tasks.'" *Id.* at 213–14. And "[i]n the same discussion, the ALJ also observed that 'progress notes from treating and examining sources generally indicate no serious problems in this area of functioning, reporting that [Hess] could perform simple calculations, was fully oriented, and had intact remote/recent memory.'" *Id.* at 214.

28

Here, unlike in *Hess*, the ALJ did not adequately explain his finding that Kadariya can perform simple tasks.  In making that finding, the ALJ does not mention Kadariya's activities of daily living, and he does not rely on opinion evidence as he found all the opinions in the record regarding Kadariya's mental functioning to be not persuasive or less than persuasive.  Further, although he cites to mixed notations in Kadariya's medical records regarding observations of mental status during specific appointments, he makes no effort to explain how those translate into Kadariya being able to do simple tasks even though she has moderation limitations in concentrating, persisting, or maintaining pace and marked limitations in understanding, remembering, or applying information.  Here, again, the ALJ failed to satisfy his duty to articulate his reasoning sufficiently to allow meaningful judicial review of his analysis.

The ALJ's articulation errors are not harmless.  "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).  Thus, a claimant must explain "'how the . . . error to which he points could have made any difference.'" *Id.* (quoting *Shinseki v. Sanders,* 556 U.S. 396, 413 (2009)).  "An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir.

29

2011).  Here, Dr. Kajic opined that Kadariya had numerous marked and extreme limitations, and the ALJ himself found that Kadariya had moderate and marked limitations.  In light of this, we cannot say the ALJ's articulation errors were harmless.

### D.  Other Claim.

Given our conclusion as to Kadariya's first two claims, we will not address her remaining claim of error.  "Plaintiff's additional claim[] of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020).  "A remand may produce different results on [that] claim[], making discussion of [that claim] moot." *Id*.

### E.  Remand is the appropriate remedy.

Because the ALJ's decision is not supported by substantial evidence, the question then is whether the court should remand the case to the Commissioner for further proceedings or award benefits to Kadariya.  We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same).  But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22.  Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or to remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019).  "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, although Kadariya's claim has been pending since 2021, we cannot say, at this point, that there has been excessive delay in the litigation of Kadariya's claim. And we cannot say that substantial evidence on the record as a whole shows that she is disabled and entitled to benefits. Thus, we will remand the case to the Commissioner for further proceedings.

## VI. Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). An appropriate order follows.

_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge